Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA BARRY, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| LYDALL, INC., MARC T. GILES, SARA A. GREENSTEIN, DAVID G. BILLS, JAMES J. CANNON, PAUL W. GRAVES, SUZANNE HAMMETT, and KATHERINE C. HARPER, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Patricia Barry ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Lydall, Inc. ("Lydall" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection

with the proposed acquisition (the "Proposed Transaction") of Lydall by Unifrax Holding Co. ("Parent"), Outback Merger Sub, Inc. ("Merger Sub"), a direct, wholly owned subsidiary of Parent, and Unifrax I LLC ("Unifrax"). Unifrax, Parent, and Merger Sub are affiliates of Clearlake Capital Group, L.P.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Lydall common stock.

7.     Defendant Lydall designs, manufactures, and markets specialty engineered filtration media, industrial thermal insulating solutions, and automotive thermal and acoustical barriers for filtration/separation and thermal/acoustical applications worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "LDL."

8.     Defendant Marc T. Giles ("Giles") is Chairman of the Board of the Company.

9.     Defendant Sara A. Greenstein ("Greenstein") is President, Chief Executive Officer, a director of the Company.

10.     Defendant David G. Bills ("Bills") is a director of the Company.

11.     Defendant James J. Cannon ("Cannon") is a director of the Company.

12.     Defendant Paul W. Graves ("Graves") is a director of the Company.

13.     Defendant Suzanne Hammett ("Hammett") is a director of the Company.

14.     Defendant Katherine C. Harper ("Harper") is a director of the Company.

15.     Defendants Giles, Greenstein, Bills, Cannon, Graves, Hammett, and Harper are collectively referred to herein as the "Individual Defendants."

16.     Defendants Lydall and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

17.     On June 21, 2021, Lydall announced that Unifrax had signed definitive agreements to acquire Lydall. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding. The press release announcing the Proposed Transaction states, in pertinent part:

3

**Clearlake Capital-Backed Unifrax to Acquire Lydall, Inc. for $62.10 per share**

**Creates Market Leading Global Specialty Materials Platform Focused On Innovative Battery Materials, Filtration Solutions, and Energy Saving Technologies**

June 21, 2021 08:45 ET | Source: Lydall, Inc.

TONAWANDA, N.Y. and MANCHESTER, Conn., June 21, 2021 (GLOBE NEWSWIRE) -- Unifrax, a leading global provider of high-performance specialty materials focused on thermal management, specialty filtration, battery materials, emission control and fire protection applications backed by Clearlake Capital Group, L.P. ("Clearlake"), today announced it has signed definitive agreements to acquire Lydall, Inc. (NYSE: LDL, "Lydall" or the "Company"), a leader in the design and production of specialty filtration materials and advanced material solutions. With its leading technologies and 23 manufacturing facilities around the world, Lydall is well positioned to capitalize on growth in clean air filtration and electric vehicle adoption, among many other attractive markets. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding, implying a total enterprise value of approximately $1.3 billion.

*     *     *

Morgan Stanley & Co. LLC acted as lead financial advisor, J.P. Morgan acted as financial advisor, and Kirkland & Ellis acted as legal counsel to Unifrax in the transaction. BofA Securities is acting as exclusive financial advisor, and Davis Polk & Wardwell LLP is acting as legal counsel to Lydall in connection with the transaction.

**Approvals and Timing**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the second half of 2021 subject to the receipt of required regulatory approvals, approvals of Lydall stockholders and other customary closing conditions.

18.    On July 21, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement

under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with

the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.    The Proxy Statement, which recommends that Lydall shareholders vote in favor of

the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Lydall's financial projections; and (ii) the financial analyses performed by Lydall's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion.

20.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Lydall Board of Directors; (ii) Lydall's Reasons for the Merger; (iii) Opinion of Lydall's Financial Advisor; and (iv) Projected Financial Information.

21.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Lydall shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.     Material Omissions Concerning Lydall's Financial Projections

22.     The Proxy Statement omits material information concerning Lydall's financial projections.

23.     With respect to the "Projections," the Proxy Statement fails to disclose: (1) all line items underlying (i) Net Sales, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) the Company's net income projections; (3) why Unlevered Free Cash Flow was not calculated for the "Aspirational Case"; and (4) a reconciliation of all non-GAAP to GAAP metrics.

24.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such

information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25.    When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

26.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.    Material Omissions Concerning BofA's Analyses

27.    In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by BofA.

28.    With respect to BofA's "*Selected Public Companies Analysis*" and "*Selected*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 30, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

*Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction BofA observed in its analyses.

29.     The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) all line items underlying Lydall's standalone unlevered, after-tax free cash flows used in the analysis; (2) the terminal values for Lydall; and (3) the individual inputs and assumptions underlying the (i) range of EBITDA multiples of 7.0x to 9.0x, and (ii) range of discount rates of 9.0% to 12.0%.

30.     The Proxy Statement fails to disclose the following concerning BofA's analysis of analyst price targets for Lydall stock: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

31.     The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Lydall shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Lydall shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

32.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above,

which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

34.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

35.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

36.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

39.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

40.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

42.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they

reviewed and considered—descriptions which had input from the Individual Defendants.

43.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

10

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 30, 2021                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*